IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WARREN J. MACDONALD,
    Plaintiff,

v.	No: 5:07cv99/MCR/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.
_____

REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant MacDonald's applications for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

PROCEDURAL HISTORY

    Plaintiff filed applications for disability insurance benefits and SSI benefits claiming an onset date of May 1, 2000.  The applications were denied initially and on

reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on July 25, 2006 at which plaintiff was represented by counsel and testified. A vocational expert also testified. The ALJ rendered an unfavorable decision on November 22, 2006 (tr. 14-22) and the Appeals Council declined review (tr. 6-8), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe impairments of (1) a history of right knee pain due to arthritis, (2) a history of cervical diskectomy at C5-6, (3) a history of lipoma of the neck, surgically removed, (4) a fracture of the right heel, and (5) a history of asbestosis; that plaintiff's history of mood disorder was non-severe; that plaintiff did not have a condition or combination of conditions that equaled one of the impairments listed in 20 C.F.R., Part 404, Subpart P. Appendix 1; that he had the residual functional capacity to perform a limited range of sedentary work in that he could stand and walk for up to two hours in a day without limitation on sitting, required a temperature controlled environment with no exposure to atmospheric pollutants, required the use of a hand held cane, could not work around moving machinery, could never climb, balance, crouch, crawl or stoop and could only occasionally kneel; that he was unable to perform his past relevant work as a structural steelworker, a riveter, a welder, a pipefitter, a heavy equipment operator, an electrician or a construction worker; that he was a younger individual with limited education but was able to communicate in English; that transferability of job skills was not material; that considering his age, education, work experience and residual functional capacity, there were jobs in significant numbers in the national economy that plaintiff could perform including

information clerk, surveillance system monitor, and repair order clerk; and that plaintiff was not under a disability as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

### PLAINTIFF'S MEDICAL HISTORY

On August 17, 1992 plaintiff went to Dr. James Talkington, an orthopedic surgeon, complaining of right knee pain.  Dr. Talkington felt that physical therapy would not be beneficial (tr. 247), and on August 27, 1992, performed an arthroscopic assisted posterior cruciate ligament reconstruction on plaintiff's right knee (tr. 378-381).  Following surgery, plaintiff had extensive physical therapy for approximately

nine months. He was also given a brace to wear (tr. 213-241). He was placed at maximum medical improvement on June 22, 1993, was assigned an impairment rating of 7%, and was told to follow up as needed (tr. 213).

On June 23, 1993, plaintiff was seen by Michael X. Rohan, M.D. for a second opinion on the extent of his impairment. Dr. Rohan opined that plaintiff would need to have a total knee replacement earlier than one would expect in a normal person, and assigned plaintiff a 10% impairment rating, comprised of 3% for meniscectomy and 7% for posterior cruciate ligament reconstruction with moderate laxity (tr. 277).

Plaintiff returned to Dr. Talkington on October 8, 1993 complaining of knee pain, exacerbated by climbing and with vibration of the floor at work. Dr. Talkington felt that plaintiff was permanently restricted from climbing and from being around vibrations. On February 3, 1994, plaintiff returned with complaints of knee pain exacerbated by weather changes. He was given injections and a prescription for Oruvail (tr. 212). Plaintiff contacted Dr. Talkington's office on July 1, 1994 regarding permanent restrictions, and was told that he had a permanent restriction on prolonged standing or walking (tr. 212). Three years later, on August 8, 1997 plaintiff went to Dr. Talkington's office complaining of arthritic type symptoms, and was told to take over-the-counter anti-inflammatories as needed (tr. 211).

Plaintiff was seen in the Emergency Room (ER) at Bay Medical Center on March 11, 1998 with complaints of right knee pain and swelling with movement. He was told to take Ibuprofen and to follow up with Dr. Talkington. He was also given a prescription for Lorcet 10 for severe pain (tr. 374-75). He returned to the ER on November 27, 2000 with complaints of right knee pain. He also complained of some numbness just below the knee but not down to the lower leg or foot. He was prescribed Lortab 5 mg and Ibuprofen 600mg for pain and told to follow-up with Dr. Lynn Garner (tr. 367-68).

On July 6, 2001, plaintiff returned to Dr. Rohan complaining of pain in his right

knee.  X-rays showed significant medial compartment narrowing and significant spurring over the patella.  Dr. Rohan felt that plaintiff would either have to live with his pain or undergo fusion or knee replacement (tr. 276).  Plaintiff returned to see Dr. Rohan on September 14, 2001, complaining that his right knee was getting sorer and stiffer.  X-rays showed significant osteoarthritis in the medial compartment.  Dr. Rohan diagnosed end stage osteoarthritis in the right knee with PCL tear (tr. 275).

Plaintiff went to Beaches Family Practice Center (BFPC) on July 31, 2002, complaining of right knee pain, among other things.  The physician at BFPC prescribed Lorcet 10mg, Valium 10mg, Xanax 1mg and Celebrex 200mg (tr. 401).  Plaintiff complained of right knee pain with the doctors at Beaches Family Practice several other times (tr. 399, 400). He also complained of right knee pain to Dr. Kassem (tr. 483-485).

On May 30, 2003, plaintiff was seen by Dr. Douglas Stringer for evaluation of a cyst on his neck.  Dr. Stringer recommended a CT scan of the neck with soft tissue windows, an MRI of the cervical spine, and EMG/NCV studies of the right arm  (tr. 292, 293).  Plaintiff returned to Dr. Stringer on June 13, 2003 and MRI results showed (1) osteophyte complex with canal measuring 8.5 mm at C3-C4, (2) evidence of significant canal stenosis with bilateral neural foraminal narrowing to 6 mm at C5-C6, and (3) disc osteophyte complex with canal measuring 8.5-9 mm at C6-C7.  A CT scan showed results consistent with a lipoma (tr. 290).  On July 31, 2003, Dr. Stringer performed a complete diskectomy of C5-C6, a partial corpectomy of the inferior aspect of C5 with removal of large centrally extruded disk fragment, and placement of K-graft at C5-C6 (tr. 282).  Plaintiff was discharged on August 2, 2003 with instructions to wear a cervical collar and to follow up in two weeks (tr. 278).  Plaintiff saw Dr. Patrick Nero on September 17, 2003 concerning the mass on his neck (tr. 306, 307), which Dr. Nero surgically removed (tr. 350).

Plaintiff continued to see his primary physician at BFPC essentially on a

monthly basis, consistently complaining of neck pain for which he was prescribed medication (tr. 388-399). He had earlier been prescribed Valium for anxiety when he started going to BFPC, and he complained of anxiety there often (tr. 387, 388, 399, 400, 401).

Plaintiff presented to Bay Medical Center ER on June 30, 2002 complaining of lower back pain from a motor vehicle accident. He indicated that his pain worsened when he bent over or twisted. A CT scan was within normal limits. Plaintiff was observed in the ER for 5 hours and released (tr. 362, 363). Plaintiff also complained of low back pain several times to his physician at BFPC (tr. 400, 439, 443).

On May 24, 2004, plaintiff was seen in the ER at Bay Medical Center for right ankle pain. X-rays disclosed a right calcaneal fracture (tr. 337-339). On June 11, 2004, plaintiff saw Jalal Sidani, DPM for his heel fracture. A CT scan showed a multifaceted impaction fraction of the calcaneus with both linear, horizontal and oblique fracture fragments identified. X-rays showed a moderate degree of soft tissue swelling as well as a comminuted calcaneal fracture. Plaintiff followed up with Dr. Sidani on June 18, 2004, who suggested that an orthopedist would be the best choice to help with this problem (tr. 403-06).

The record also shows that in early of 2006 plaintiff sought pain management care from Ata Mohsin, M.D. (tr. 494-496). Dr. Mohsin gave plaintiff a series of cervical facet injections on February 27, 2006, March 28, 2006, and April 11, 2006 (tr. 488-490). Plaintiff returned for a follow up with Dr. Mohsin on June 1, 2006 and reported that the injections had helped his pain somewhat (tr. 486).

On June 22, 2003 plaintiff was seen in the ER at Bay Medical Center with a chief complaint of difficulty breathing (tr. 365). Chest x-rays appeared normal. Plaintiff saw Dr. Kamel Zawahry on July 24, 2003 for a pulmonary evaluation (tr. 429, 430). Dr. Zawahry felt that plaintiff's history of asbestos exposure may have caused the breathing problems (tr. 430). On August 21, 2003 plaintiff returned to Dr.

Zawahry, x-rays and pulmonary function tests showed interstitial prominence and mild obstructive and restrictive ventilatory impairment with decrease in diffusion to 67%. Plaintiff was placed on Advair and Ultracet (tr. 422).

On March 3, 2004, plaintiff was referred for a consultative examination by Dr. Kris Lewandowski. Plaintiff's physical examination was entirely normal except for plaintiff's refusal to try to heel and toe walk, and his resistance to examination of his neck. Range of motion, reflexes, strength, sensation and other physical signs were otherwise normal. Dr. Lewandowski felt that plaintiff may have been exaggerating his symptoms, and stated that plaintiff did not have any manual or ambulatory impairments and did not need any assistive devices for walking (tr. 310-312). Just over a month later, on April 8, 2004, plaintiff was seen for a mental health consultation by David A. Loiry, Ph.D. Plaintiff arrived with braces on both knees and a noticeable tremor in his right hand, and had trouble walking. His speech was appropriate but inaccurate as to content at times. His mood was depressed and he appeared depressed. His memory was shown by testing to be "fair." Dr. Loiry's diagnosis was mood disorder due to multiple physical impairments with depressive features. His prognosis was unfavorable for improvement. Dr. Loiry also opined that if plaintiff were awarded benefits, they should be managed by a caring, competent adult (tr. 321-322).

Plaintiff saw Dr. Leo Chen, an orthopedic surgeon, in consultation on February 15, 2006. X-rays of the right knee showed moderate degenerative changes, especially in the medial compartment. Right ankle x-rays showed a healed calcaneus fracture, significant irregularity of the subtalar joint, and mild degenerative changes of the ankle joint. Dr. Chen found loss of range of motion in the right knee, ankle and neck with inability to toe, heel or tandem walk; an antalgic gait on the right side and use of a cane for balance; weakness in the right knee; and very limited range of motion with tenderness in the ankle. Dr. Chen felt that plaintiff

would have no environmental or mental work-related restrictions. He completed a Medical Source Statement regarding plaintiff's limitations, in which he opined that plaintiff could occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10, that he required a hand-held assistive device in order to ambulate effectively, and that sitting was not affected by impairments. He also indicated that plaintiff should never climb, balance, crouch, crawl or stoop but that he could occasionally kneel (tr. 471-480).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to find that plaintiff's mood disorder was severe, and in failing to apply the correct standard to plaintiff's subjective complaints of pain, and that plaintiff was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Mood disorder as severe.</u>

Plaintiff contends that there was sufficient evidence of a mood disorder to have required the ALJ to include that impairment as a severe limitation. At step two the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 1520(c). The burden at this step is on the claimant. *Chester v. Bowen, supra.* The Commissioner's regulations provide:

> What we mean by an impairment(s) that is not severe.
>
> (a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521. The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe. The ruling provides in part:

> As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

In *Brady v. Heckler*, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that

> **[s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.**

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue. And the ALJ's findings must be supported by substantial evidence.

Here the ALJ discounted the psychological examination by Dr. Loiry because of the glaring differences between the person Dr. Loiry saw and the one seen by Dr. Lewandowski only one month prior. When plaintiff went to Dr. Lewandowski he was not wearing knee braces, was not using a cane, and walked, sat and got back up without difficulty. Dr. Lewandowski noted no problems, mental or otherwise. The ALJ determined that plaintiff was exaggerating his symptoms when he went to Dr. Loiry, and gave that opinion little weight.

There was substantial record evidence to support this finding. Although plaintiff reported at the BFPC that he was anxious, and was prescribed Valium, he never sought mental health counseling. Failure to seek treatment can be used as a basis for discounting subjective complaints. *Watson v. Heckler*, 738 F.2d 1169 (11th Cir. 1984). Moreover, the difference between the person who was examined by Dr. Lewandowski and by Dr. Loiry was sufficient to raise serious credibility concerns on the part of the ALJ. As discussed in the next section, determining credibility is

at the heart of the ALJ's function. The ALJ's finding that plaintiff's mood disorder was not severe was supported by substantial record evidence, and plaintiff is not entitled to reversal on this ground.

   2.   **Plaintiff's subjective complaints of pain.**

Plaintiff also contends that the ALJ did not apply the correct pain standard in discounting plaintiff's subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226.

---

   [1] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. And although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health*

*and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here the ALJ discounted plaintiff's credibility based on the great discrepancies between plaintiff's appearance at Dr. Lewandowski's examination and that of Dr. Loiry. He also noted that plaintiff's medical record as a whole simply did

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

not support his claimed limitations.  Although plaintiff had undergone neck surgery, no significant follow up treatment had been necessary.  The ALJ also gave the opinion of Dr. Chen, an orthopedic surgeon, great weight in finding that plaintiff could do sedentary work.  Plaintiff argues that he had proven underlying conditions that could cause pain.  The ALJ acknowledged those conditions although he did not accept the extent of plaintiff's claimed limitations based on those conditions.  The ALJ's findings concerning plaintiff's claimed physical and mental limitations were well within his realm of judging, *Arnold, supra*.  Plaintiff has not shown that the ALJ erred, and he is not entitled to reversal on this claim.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 28th day of July, 2008.


/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE


NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

Case No: 5:07cv99/MCR/MD